Case No. 14-5188 United States of America v. DeAndre Blackman to be submitted on the briefs. Consolidated with Case No. 14-5364 United States of America v. Douglas Martin. Oral argument not to exceed 15 minutes per side. Alison Ellert for the appellant. Good morning, and may it please the Court, Alison Ellert on behalf of Mr. Douglas Martin. Also with me today is Mr. Martin's mother, Ms. Sylvia Sawyers, who's seated to the Court's far right in the third row. With the Court's permission, I'd like to reserve four minutes of time for rebuttal. Mr. Martin was convicted of one count of conspiring to distribute illegal narcotics and one count of witness tampering and sentenced to a top-of-the-guidelines term of 151 months. Now, there are a number of issues we could discuss this morning, but at least at the outset I thought I would try and home in on three that I think may be of greatest interest to the Court. First, whether the Court even has the authority to reach the merits of the Fourth Amendment violation we have asserted, and to refresh the Court's recollection, the basis for that violation is the introduction into evidence at trial of text messages and call logs lifted off of Mr. Martin's cell phones pursuant to a warrantless search of those phones. The second issue I would address would be whether, even if the Court were to agree that there was a Fourth Amendment violation here that should be remedied by the exclusionary rule, whether that error is nonetheless harmless. And finally, whether the District Court took account of impermissible considerations in sentencing Mr. Martin. Jumping right into the issue of whether the Court has the authority to even hear and decide the Fourth Amendment violation, the government contends that the Court does not because Mr. Martin did not file a motion to suppress in the District Court. Now, I think the government is wrong here because it's not taking adequate account of a recent amendment to Federal Rule of Criminal Procedure 12. The prior version of, well, first of all, Rule 12 says that motions to suppress must be brought before trial, but that nonetheless, untimely suppression claims can still be considered, provided there's been a showing of good cause. Now, the prior version of Rule 12 characterized untimely claims as having been waived, and on that basis, this Court's prior precedent had held that in the absence of a suppression motion brought in the District Court, this Court is without any authority to decide the issue. What is the effective date of the new rule? Excuse me, Your Honor? The effective date of the new rule. I'm sorry, there was... The effective date of the new rule. It's December 1, 2014, and if the Court's question is, does that apply in this case? Yes. In the Supreme Court's order accompanying the amended rule, it says that, insofar as just and practicable, the new rule should apply to pending litigation, and it was applied in the Soto case, which is the recent published authority of this Court that interprets the amended rule to mean that suppression issues not raised in the District Court are merely forfeited in this Court, not waived, and are therefore subject to plain error review. Now, the government has pointed out that a petition for panel rehearing is pending in the Soto case on the grounds that the Court there overlooked an advisory committee note to the amended rule, which states that the amended rule retains the existing standard for untimely claims. I think, however, if you read that amended committee, or excuse me, the committee note in context, you'll see that its reference to existing standard is a reference to the good cause requirement, not a reference to the issue of waiver versus forfeiture. Here, we think that there shouldn't really be any dispute that the good cause standard is satisfied because at the time Mr. Martin was tried and convicted, the Supreme Court had not only not decided the Riley case, which is the seminal case holding that search warrants are required prior to law enforcement searches of cell phones, but the petition for certiorari in Riley and its companion case had not even been granted by the Supreme Court. So there was no way trial counsel could have anticipated that the Court would grant cert in Riley or anticipated the major announcement or major new pronouncement on Fourth Amendment law, and therefore we would urge the Court to reach the merits of the Fourth Amendment issue subject to plain error review. Now, turning to the substance of that issue, I would propose to just jump right into the harmless error analysis because if the Court does not agree that this was not harmless, there would really be no reason for the Court to weigh in on whether there was a constitutional violation that should be remedied by the exclusionary rule. The Chapman harmless error analysis requires the Court to consider not whether there was sufficient evidence separate and apart from the tainted evidence from which the jury could have convicted Mr. Martin, but rather whether there is any reasonable possibility that the tainted evidence contributed to the verdict convicting him, and here we contend that that's exactly what happened. It's important to keep in mind that the only drug charge of which Mr. Martin was convicted was a conspiracy count. There were no drugs found on his person at the time of his arrest. There was no physical evidence linking him to the hotel room in which the drugs that were part of this conspiracy were discovered. Now, the government did have the inculpatory testimony of Mr. Martin's co-conspirator, Jessica Caveza, who testified that she was with Mr. Martin on the day in question and saw him engage in multiple drug transactions. There was ample reason for the jury to be skeptical of Ms. Caveza's testimony, not least of which because she admitted that But that's been decided, has it not? That credibility question, the jury decided, I don't understand that we have any authority to say, well, she wasn't credible, therefore she's down the tubes. I agree entirely, Your Honor. All right. Her credibility is not a matter for this court to decide. I don't think we know one way or the other whether the jury credited her testimony or not, but the bottom line is once the text messages and call logs from Mr. Martin's cell phone were put in front of the jury, they no longer had to decide whether they believed her or not, and they didn't have to resolve an important discrepancy between her testimony and that of another witness who testified favorably to Mr. Martin. And this is true because Now, tell me again who the unbelievable witness is you're talking about. Give me the name again. Jessica Caveza. Yeah. So weren't these messages texted to her? At least some of them? There are messages that she texts to Mr. Martin inquiring about purchasing drugs from him, and the record shows a number of calls during the relevant period from her to him. Well, what about from him to her? I don't recall that there are messages from him to her. I believe that there are calls to him from her. So what is the content? This is what I understand Judge Daughtry to be asking you. What's the content of the text messages at issue? Who's the recipient of them, and what are they generally? Well, let me try and break that down. First, we have Mr. Martin's text messages where we see him talking about drug dealing. Well, that's what we're talking about, the ones that might be affected by Riley. Right. Well, there are at least one of his text messages is to an unidentified person in which he appears to be directing that person to assist him in his drug trafficking activities. On one of the co-defendant's cell phones, Mr. Udusoro, there's a text message purportedly from Mr. Martin saying, Get the scale for me. There are text messages from co-defendant Blackman to Mr. Martin in which Mr. Blackman says, All right, and got it. On their face, those don't have anything to do with drug trafficking. Isn't there a text message to Kaveza in which Martin referenced providing her with quote, 20 packs, unquote, and quote, trays of food, unquote, phrases denoting heroin that showed up on her phone? I thought that those were text messages sent from his phone and that we don't have Right, but if he sent them to her, the government could get them from her. They don't need to get them from his phone. But I don't believe that the government introduced into evidence the text messages he sent to her. They certainly introduced his text messages. Well, they're in the record. What are his text messages? Are you meaning to say his received text messages? I mean, they're his whether he sent them or whether he received them. His sent text messages in his own words from his phone do refer to a tray of food, powerful food, which there's testimony saying that that's veiled references to heroin. And need to get rid of these 15s, meaning 15 milligram tablets of oxycodone, and those went to Jessica Kaveza. So they were available to the government from her phone. But I don't believe that the government introduced that evidence. Well, but we're talking about inevitable discovery here, not, I mean, they could have got, if they knew that Riley was coming down and that they were not allowed to get messages off his phone, they simply would have gotten her phone and introduced those messages. Well, that seems right as a technical matter. But because it didn't happen here, I don't know what the government got from each cell phone or not. There are other instances. Well, you know, the reason we don't know is because his lawyer at the time, and I take it that wasn't you, did not file a motion to suppress. If the motion to suppress had been filed, we would know exactly what the situation was. But there wasn't a motion to suppress. I can't imagine why. I mean, Riley hadn't come down, right, but still in a situation like this would want to file one. So there we are. I would much prefer to be standing in front of the court with that motion having been filed, but it wasn't filed. You know, it's the motion that would identify what we're even talking about so that when it comes to the point of determining whether there was harmless error or not, we would know what the content of the motion was. I agree, Your Honor. We just want to make the point that we think it was all of this electronic data that enabled the jury to find each of the elements of conspiracy, irrespective of Ms. Cavese's testimony. I don't think that the electronic data of the co-defendants alone was enough, but in combination with that of Mr. Martin, I don't think the court can be confident that there wasn't harmless error here, that this tainted information didn't contribute to the verdict. Thank you. All right, Ms. Smith. Good morning. Good morning. May it please the court, Kate Smith from the Eastern District of California. Have you ever Googled or YouTubed Kate Smith? Yes, I have. Okay, just checking. I married into the name and I'm proud of the heritage. I will not sing for you today. Thank you. I'm here on behalf of the United States. This court is categorically without jurisdiction to hear Martin's suppression argument. Well, you know, I read the letters that came in. I haven't read all the cases that are mentioned in there. But the allegation is that this reference is to the good cause standard and not to the waiver forfeiture statute standard. What about that? It does, as noted in the government's 28-J letter, the new Rule 12 contains this note that it doesn't change the standard for untimely claims. I think that extends to the good cause standard, yes, as referenced in the rule. But the rule changed the language so that there's no longer a waiver forfeiture distinction. But there's nothing to suggest that it also wanted to go so far as to change the entire procedure for reviewing such an argument. In this case, it's a perfect example for why the longstanding precedent that this court cannot hear a suppression argument raised for the very first time on appeal doesn't make any sense. The issue here and what's not before the court is that the defendant, Martin, consented to the search. This issue was never raised before the district court. Presumably that was the trial court counsel's discretion. So if he, I mean, if in view of a consent, if that were found, it wouldn't really matter what Riley holds. Exactly. So Riley has nothing to do with this case. Because Martin consented, Riley wouldn't even give good cause to review this issue. And appellant is essentially trying to argue it both ways. On the one hand, defendant Martin is saying he didn't have occasion to challenge the search because Riley hadn't been decided and that Riley gives him that good cause. But on the other hand, he's arguing that good faith wouldn't apply because the law was so unsettled at the time. Just to note on the new Rule 12, SOTO is not binding law yet. Because the petition for rehearing was timely filed, it stays the mandate in that case. And I don't believe that there is any controlling law in this Sixth Circuit that says what the new Rule 12 really does for the forfeiture versus waiver arguments. Are there opinions out there in the other circuits yet? I mean, this could cause a little confusion, I'm thinking. I agree. It could cause some confusion. I don't have the answer to that decisively, but I could submit something. Really, the issue, though, goes to the suppression context where the court here does have a decision in Turner saying even if plain error were available in the context of a suppression argument, this court couldn't review such an argument for the first time. And this case just exemplifies that perfectly. Well, you know, there could be a situation in which there was no motion, pre-trial motion, to suppress, and they go to trial and the lawyer at trial then raises a challenge under the Fourth Amendment to the seizure of whatever is at issue. And at that point, it's laid out on the record, you know, what's going on, so that we would have some way to review it. In that case, I can see that you might want to say we're reviewing for plain error because we do have a record to review. It wouldn't, you know, I'm going to bet 99 times out of 100 you'd come out with a harmless error, no plain error ruling, but at least you'd have a record to look at. The problem here, I think, is we don't. We're just piecing it together, and that really doesn't make sense. In that scenario, it might be possible for the court to at least review the issue because they would have something to go on. Here we have not only is the recording not in the issue but in the record, but if the issue had been raised, we'd also have the testimony of the officers who had obtained the consent. Well, the consent, did you argue the consent in your brief? No, Your Honor. Okay, well, I'm having, okay, that was why I was having a little trouble putting that together, I do believe. So how do we know there was, I mean, is there, would the trial record provide an evidentiary basis for the finding of consent, or are we relying on your telling us at argument that there was consent? This is the problem, and this is why it's confusing. There is nothing in the trial record. There was an audio recording of Mr. Martin's consent that was produced in discovery, but because it was never raised before the district court, there's nothing we can point to that was considered by the district court that we could get into the appellate record. So there's evidence, but you were never called upon to come forth with the evidence because there was not a motion to suppress on which an evidentiary hearing could have been held. Precisely, precisely. And when we submitted the briefs in December, the law was very clear that a suppression argument could not be raised for the first time on appeal, and this court was without jurisdiction to even consider it, which is why we went the route that we did in the briefs. But this just ties back to why it would be so hard for this court to hear suppression arguments for the first time, because this would happen over and over. Trial counsel makes a determination as to suppression, and if nothing is brought up before the district court, then we have nothing in the appellate record to rely on to make these factual-based arguments. So we really couldn't make a finding. There was consent. I mean, the most you could do with this, arguably, if you can do anything with it, would be to point out the difficulty in which the court is placed in being unable to determine this issue due to the failure to file a motion to suppress. Yes, Your Honor. And that's why in our brief we went through the analysis as though this was a warrantless search, because that's how it looks on the appellate record. That's presumably why the argument was made by appellant's counsel at this level. There was nothing to indicate just in reviewing the record that Martin had consented. Well, and consent might explain why no motion to suppress was filed, despite the fact that if rally hadn't been decided, certainly this issue was percolating its way through the district courts. Yes, Your Honor, precisely. Briefly, I'd like to address appellant's harmless error arguments. They are detailed in the government's brief, but the United States had a host of other evidence to draw on that suggested Mr. Martin's guilt. In particular, there were nine cell phones seized related to these events, and five of them Mr. Martin does not have standing to challenge the search of those phones, and they are from his co-conspirators. As for which version of text messages were admitted, Martin's cell phone records were the versions used at trial. It was a trial against Mr. Martin. We had consent to search those phones. We had no reason to think there was any issue with that evidence. But certainly text messages and phone call records that were sent to his co-conspirators, we had lawfully as well. Unless you have any questions about the witness tampering charges or the sentencing, the United States will rest on its brief for the reasons stated there. And here today, defendant Douglas Martin's conviction and sentence should be affirmed. Thank you. Thank you. Let me try and address this issue of consent. When I filed the opening brief, I was unaware of this recording. The government graciously alerted me to it. I would have withdrawn the argument entirely if I thought that that recording clearly reflected consent. I realize it's not in the record in front of us. Well, I think we don't need to even argue about it because it's ephemeral for purposes of this appeal. We would not credit you with anything inappropriate in persisting in the argument you've made. I simply wanted the court to understand procedurally how this arose in that I absolutely would have withdrawn the argument if I thought that that recording was enough to establish consent. Let me just briefly in my remaining time address the sentencing issue. Mr. Martin is the father of seven children, five of whom he shares with his longtime partner. In his allocution at sentencing, he asked the court for lenience based on his responsibility to his children. He submitted a number of letters from family talking about what a good father he had been. Importantly, he had not filed a variance motion. He was simply seeking a sentence at the bottom of the guidance range, which would have been about 121 months. The district judge used the allocution as a kind of jumping-off point to engage Mr. Martin in a colicky about whether his children were, in the district court's words, legitimate, whether he was married to the mother of his children. To inquire further about women he was seeing in Tennessee in a romantic way. And I think a fair reading of that transcript doesn't lend itself to confidence that these issues did not infect the district judge's consideration of what was a proper sentence for Mr. Martin. And clearly they had no bearing on what a just sentence would be. Well, you know, I mean, one could say that some of that was gratuitous, i.e., the district judge's observations about Mr. Martin's lifestyle. On the other hand, Mr. Martin sort of... Opened the door. Sort of opened the door by claiming to be a family man and a needed role model when much of his conduct in connection with this case suggested that was not so. But in the end, the district court gets down to explaining the various factors on which the sentence was based. And it doesn't appear to have included partying or the circumstances of his children's birth or anything of that sort or, you know, multiple women or anything like that. So some of it may have indeed been gratuitous, but it sort of came about through Mr. Martin's efforts to clothe himself in virtue. Well, I think that there was just no reason for the court to even embark on this line of inquiry if it determined that none of this was going to be relevant. But this wasn't one or two questions here. This went on for quite some time. And I think when the court says, yes, being a good family man is important to me and I want to talk to you about that, and when he says, you know, until you take responsibility not only for your criminal wrongdoing but for some of these personal failings, you're going to present a risk of recidivism, I think it's very hard to read all of this and say that this just didn't have any impact on the district judge's thinking about what an appropriate sentence should be. Mr. Martin wasn't asking for lenience because he was a great partner or husband. He was asking for lenience based on his obligations to his children. And the evidence in front of the court from family members suggested that that was true. And, in fact, we know in everyday life that people can be less than wonderful spouses and be wonderful parents. So it seems to me that a fair reading of that. You know, there's a fine line. I mean, we ask all that kind of social data is included in the pre-sentence report for a reason. Defendants all the time ask the court to consider such personal circumstances in granting a lenient sentence. And yet, you know, if the district court actually discusses it with the defendant, that doesn't automatically make it an impermissible factor. Well, I certainly sympathize with the difficult job the district judge had to do here. I mean, if you took this argument to its extreme, you'd excise everything that has to do with an individual's personal situation from the pre-sentence report. You'd go back to where we were under mandatory guidelines with many of the factors that now can be considered being factors that are absolutely prohibited from being considered. I mean, we're somewhere in an in-between land. And I'm very sympathetic to that, and I would not want to return to that era. But I do think that the words we use matter, and some of the expressions here of the district court judge I think are concerning in how he viewed this case. What was the possible range of sentencing? 121 to 151 months. Thank you. Thank you. We appreciate the argument that both of you have given, and we will consider the case carefully. And you are appointed counsel, Ms. Ellard, and we appreciate very much your having accepted the appointment of Mr. Martin and your very vigorous and fine representation of him here today. Thank you.